Samuel H. Hoestadter, J.
This is a proceeding under article 78 of the Civil Practice Act to annul a determination of the New York City Transit Authority, by which the petitioner was suspended and kept on an inactive duty status, and a later determination removing him, and to direct his reinstatement with back pay.
The petitioner, an honorably discharged veteran of World War II, was appointed to the position of railroad clerk provisionally on November 1, 1948, and permanently on April 6, 1949. He performed his duties until November 18, 1953, when he was pronounced medically disqualified temporarily and suspended from active duty. This action followed an examination by the Authority’s medical department made on the instructions of one of the petitioner’s superiors. Before this examination was ordered the petitioner had been concerned in several incidents, in themselves perhaps not .serious, and unnecessary to be detailed here. On many occasions in 1952 and 1953 the petitioner, who was employed in change booths, complained that the turnstiles at his stations were not operating properly and that money was mysteriously appearing and disappearing in his booth. When these turnstiles were inspected they were found to be in perfect operating condition. The petitioner, however, insisted that they were being tampered with and that fellow employees and possibly others were engaged in a conspiracy to besmirch his character and undermine his standing with the Authority. From time to time he addressed lengthy communications of like *448 tenor both to his superiors and to the Civil Service Commission. These occurrences gave his superiors natural concern and prompted the medical examination of November 18,1953, already mentioned. The examining physician reported that the petitioner appeared mentally normal but that, because of his history, possible schizophrenia with paranoid delusions should not be ruled out. He, therefore, advised a neuropsychiatric examination. The petitioner refused to submit to such psychiatric examination and adhered to his refusal until his dismissal under circumstances to be stated.
Meanwhile the petitioner was not permitted to resume work and periodically was pronounced by the Authority’s medical director to be medically not qualified to perform his duties.
On April 27, 1955, the petitioner was served with written charges to the effect that since November 25,1953 he had refused to submit to examination by the Authority’s consultant psychiatrist. The charges embodied notice of a hearing to show cause why he should not be dismissed or otherwise disciplined and informed him that at the hearing he was entitled to be represented by a person of his own choosing. A healing was held on May 4, 1955, which was reported stenographically and the minutes are before the court. At the outset counsel for the petitioner’s union stated that he wished to withdraw because, though he had offered his services, the petitioner preferred to represent himself. The petitioner did not dispute this statement and did, in fact, then represent himself throughout the hearing. He repeated his refusal to submit to a psychiatric examination, saying that he was acting on legal advice. His position at the hearing is thus summed up in his own words: “I am deliberately refusing because I want to make a court case out of - it.” The charges were sustained and the petitioner was dismissed from the service on May 19, 1955, effective on May 4, 1955, the date of the hearing.
Both the petitioner and the respondents urge that this case does not fall under either subdivisions 6 or 7 of section 1296 of the Civil Practice Act and that, not alone is there no ground for transferring it to the Appellate Division, but that the court at Special Term is required to dispose of it on the merits (Matter of Rotkiewicz v. Department of Mental Hygiene, 283 App. Div. 458, 461, affd. 307 N. Y. 847; Matter of Joyce v. Bruckman, 257 App. Div. 795; Matter of Little v. Richter, 277 App. Div. 1119).
There is no need to dwell further on the factors in the petitioner’s personality which led the Authority to direct him to undergo a psychiatric examination. I am completely satisfied *449 from my study of the record that the direction was, in the circumstances shown, both reasonable and amply justified, that his admitted refusal to comply with the direction constituted insubordination, and that for his insubordination he could properly be removed from the service (People ex rel. Rudd v. Cropsey, 173 App. Div. 714, affd. sub nom. People ex rel. Rudd v. Lewis, 219 N. Y. 641). Unless persistent refusal to comply with a proper order is held ground for discipline, chaos must ensue. The measure of the discipline is within the discretion of the Authority; removal for willful defiance of a lawful order is not an abuse of discretion.
The petitioner misreads Matter of Smith v. McNamara (277 App. Div. 580) which dealt with an indefinite and enforced suspension for asserted disability, not with a removal on charges of insubordination. Nor does the case lay down a rule of universal application which forbids an agency such as the Transit Authority to require an employee to undergo a psychiatric examination.
Since the petitioner was lawfully removed from the service he may not be reinstated. Nor may he in this proceeding be awarded any pay which may have been wrongfully withheld during his period of inactivity. Such award is an incident of reinstatement and necessarily falls with the denial of reinstatement (Matter of Bush v. Beckmann, 283 App. Div. 1070). If, as the petitioner contends, his inactivity without compensation was illegal and he is entitled to his compensation, his remedy therefor is not in this proceeding. The question of his right thereto and the related question of laches have not been considered and hence are not passed on.
The proceeding is, therefore, dismissed, but without prejudice to any right the petitioner may have to unpaid compensation.